UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| My Move Mortgage, LLC,<br><br>                  Plaintiff,<br><br>v.<br><br>Stephanie Bevard,<br><br>                  Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING AS MOOT IN PART [ECF NO. 12] DEFENDANT'S MOTION UNDER F.R.C.P. 12(b)(3) AND (12)(b)(6) TO DISMISS FOR IMPROPER VENUE AND FAILURE TO STATE A CLAIM**<br><br>Case No. 2:25-cv-00954-DBB-CMR<br><br>District Judge David Barlow |

Before the Court is Defendant Stephanie Bevard's Motion under F.R.C.P 12(b)(3) and 12(b)(6) to Dismiss for Improper Venue and Failure to State a Claim,[1] Plaintiff My Move Mortgage, LLC's ("My Move") response brief,[2] and Ms. Bevard's reply.[3] Ms. Bevard is a former employee of My Move. My Move alleges that Ms. Bevard breached her employment contract by soliciting third-party entities to refer their clients to a competitor instead of My Move and by competing with My Move within one year after separation. Ms. Bevard moves to dismiss, arguing that Utah is not a proper venue and that My Move failed to state a claim. Having reviewed the briefing and the case law, the court finds that oral argument is not necessary.[4]

---

[1] Mot. under F.R.C.P 12(b)(3) and 12(b)(6) to Dismiss for Improper Venue and Failure to State a Claim ("MTD"), ECF No. 12, filed December 15, 2025.
[2] Opp'n to Def.'s Mot. to Dismiss for Improper Venue and Failure to State a Claim ("Opp."), ECF No. 13, filed January 12, 2026.
[3] Reply on Mot. under F.R.C.P 12(b)(3) and 12(b)(6) to Dismiss for Improper Venue and Failure to State a Claim ("Reply"), ECF No. 14, filed January 22, 2026.
[4] *See* DUCivR 7-1(g).

## BACKGROUND[5]

Ms. Bevard was employed by My Move as a Branch Manager.[6] Ms. Bevard's duties included soliciting, originating, and administering the closing of residential home loans.[7] Ms. Bevard led operations in Arkansas, though she attended trainings and other meetings at My Move's Headquarters in Utah.[8]

As part of her employment, the parties entered into a Branch Manager Agreement ("Agreement") on February 21, 2024.[9] The Agreement specifies that it is governed by Utah law.[10] The Agreement prohibits Ms. Bevard from interfering with My Move's business during her employment and for one year thereafter:

<u>COMPETITION</u>

…

During the term of Branch Manager's employment and upon termination of employment by Branch Manager or Employer, and for a period of one (1) year thereafter, Branch Manager shall not either directly or indirectly interfere with the business of Employer, nor shall Branch Manager solicit, attempt to hire or hire any other personnel or employees of Employer or any of its subsidiaries or affiliates, except for Employees working in the Branch Office of Branch Manager without written approval of Employer.[11]

---

[5] The following facts are taken from Plaintiff's Complaint and Defendant's evidence. The court considers Defendant's evidence for the purposes of Defendant's 12(b)(3) motion for improper venue. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260 (10th Cir. 2012). But the court only considers the facts from Plaintiff's Complaint for Defendant's 12(b)(6) motion for failure to state a claim. *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).
[6] Verified Compl. ("Compl.") ¶ 1, ECF No. 2, filed October 27, 2025.
[7] Compl. ¶ 10.
[8] Compl. ¶¶ 7, 18, 27c; Compl. Ex. A ("Agreement") at 1; Declaration of Stephanie Bevard ("Bevard Dec.") ¶¶ 2, 8–9, ECF No. 12-1, filed December 15, 2025; *see also* Opp. 3.
[9] *See* Agreement.
[10] Compl. ¶ 7.
[11] Agreement § VI.B.

2

The Agreement also prohibits Ms. Bevard from soliciting prospective borrowers in My Move's "pipeline" after termination:

TERMINATION OF AGREEMENT

…

Branch Manager understands and agrees that whatever pipeline exists at the time of the termination is and shall remain the property of the Employer. Branch Manager shall not solicit prospective borrowers from the pipeline. In the event that the Branch Manager solicits or attempts to solicit borrowers in Employer's Branch Office pipeline it[] shall be considered an action to cause Employer monetary damages and Employer will seek such remedies as afforded by law.[12]

And lastly, the Agreement contains a Confidentiality provision:

CONFIDENTIALITY

…

All files, records, documents, drawings, specifications, proprietary information, and similar items relating to the business of Employer, whether prepared by Branch Manager or otherwise coming into Branch Manager's possession shall remain the exclusive property of Employer and shall not be copied or removed from the premises of Employer under any circumstances whatsoever without the prior written consent of the Employer.[13]

As part of her job as Branch Manager, Ms. Bevard cultivated relationships with referral sources, including Collier Properties, LLC ("Collier") and All Things NWA ("All Things").[14] All Things is an Arkansas LLC with its employees "local" in Arkansas.[15] Collier's location is unclear from the complaint and Defendant's evidence, but both parties seem to assume in their arguments that Collier is also located in Arkansas.[16] At the very least, it seems that Collier

---

[12] *Id.* § XVI(B).
[13] *Id.* § V.
[14] Compl. ¶ 14.
[15] MTD Ex. 1; MTD Ex. 2.
[16] *See* MTD 9; Bevard Dec. ¶ 8; Opp. 15.

3

primarily referred Arkansas-based clients to Ms. Bevard in My Move's Arkansas office.[17] My Move entered into Marketing Services Agreements (MSAs) with Collier in July 2024 and All Things in September 2025.[18]

On September 19, 2025, Ms. Bevard and members of her team communicated their intent to leave My Move.[19] Shortly thereafter, My Move terminated Ms. Bevard and all of its Arkansas employees.[20]

Sometime between September 20-22, 2025, Ms. Bevard contacted Collier and All Things and persuaded them to cancel their MSAs with My Move.[21] Ms. Bevard knew the termination provisions of the MSA's from her position as branch manager and used that knowledge to assist Collier and All Things in cancelling their MSAs.[22] On September 22, 2025, Collier and All Things cancelled their MSAs with My Move.[23] Both informed My Move that Ms. Bevard encouraged them to cancel their MSAs.[24]

Collier and All Things, assisted by Ms. Bevard, signed new marketing agreements with First Colony Mortgage, a competitor of My Move.[25]

## STANDARD

In a diversity action, 28 U.S.C. § 1391(b) grants the court venue in:

> (1) a judicial district where any defendant resides, . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at

---

[17] *See* Bevard Dec. ¶ 8; MTD 23.
[18] *Id.* ¶ 15.
[19] *Id.* ¶ 18.
[20] *Id.*
[21] *Id.* ¶ 19.
[22] *Id.*
[23] *Id.* ¶ 21.
[24] *Id.* ¶ 21.
[25] *Id.* ¶ 20.

the time the action is commenced, if there is no district in which the action may otherwise be brought.[26]

To review the propriety of venue under § 1391(b)(2), the court "conduct[s] a two-part analysis."[27] "First, [the court] examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims."[28] "Second, [the court] determine[s] whether substantial 'events material to those claims occurred' in the forum district."[29] "The substantiality requirement is satisfied upon a showing of 'acts and omissions that have a close nexus' to the alleged claims."[30] "[A] plaintiff may rest on the well-pled facts in the complaint to oppose a motion to dismiss for improper venue, but 'only to the extent that such facts are uncontroverted by defendant's' evidence."[31]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[32] Thus, to survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[33] A claim 'has facial plausibility' if the plaintiff 'pleads factual content that allows the

---

[26] 28 U.S.C. § 1391(b).
[27] *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010).
[28] *Id.*
[29] *Id.* (quoting *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 357 (2d Cir. 2005)).
[30] *Id.* (quoting *Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1372 (11th Cir. 2003)). Federal Courts are split as to whether the burden is on the Defendant to show improper venue or on the Plaintiff to show venue is proper. *See* 5B Wright & Miller's Federal Practice & Procedure § 1352 (4th ed.) ("A number of federal courts have concluded that the burden of doing so is on the defendant, since venue is a "personal privilege" that can be waived and a lack of venue should be established by the party asserting it. On the other hand, what appears to be a larger number of federal courts have imposed the burden on the plaintiff in keeping with the rule applied in the context of subject matter and personal jurisdiction defenses."). The Tenth Circuit has not yet ruled on who bears the burden. That said, in the case at hand, the court declines to decide which party bears the burden as the result is the same either way.
[31] *Hancock*, 701 F.3d at 1260.
[32] *Sutton*, 173 F.3d at 1236.
[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[34] But "[t]he court does not accept as true legal conclusions that are couched as factual allegations,"[35] as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[36]

## DISCUSSION

The court first considers whether venue is proper.

**I.    Venue**

Here, there is no dispute that § 1391(b)(1) and (3) do not apply. Thus, Plaintiff's only argument is that venue is proper under § 1391(b)(2), which states that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[37]

To evaluate whether venue is proper under § 1391(b)(2), "[f]irst, [the court] examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims."[38] Here, Plaintiff claims that Defendant breached non-compete and confidentiality requirements in their employment agreement. Specifically, Plaintiff asserts that the following actions breached the agreement:

> a. Persuading My Move's business relationships, including Collier and All Things, to terminate their MSAs with My Move;
>
> b. Diverting business opportunities, both present and future, to a competitor, including First Colony Mortgage;

---

[34] *VDARE Found. v. Colorado Springs*, 11 F.4th 1151, 1158–59 (10th Cir. 2021) (citing *Iqbal*, 556 U.S. at 678).
[35] *Murphey v. Mid-Century Ins. Co.*, No. 13-2598, 2014 WL 2619073, at *7 (D. Kan. June 12, 2014) (citing *Ashcroft*, 556 U.S. at 678).
[36] *Ashcroft*, 556 U.S. at 678.
[37] 28 U.S.C § 1391(b).
[38] *Emps. Mut. Cas.*, 618 F.3d at 1166.

  c. Using My Move's confidential business information to facilitate Collier and All Things terminating their MSAs with My Move;

  d. Engaging in competition with My Move within one year of her separation from employment; and

  e. Otherwise breaching express and implied terms of the Agreement.[39]

All these actions underlying Plaintiff's claim occurred in Arkansas. However, Plaintiff also asserts that Defendant visited Utah on a frequent and recurring basis to attend meetings and trainings, entered into a contract governed by Utah law with a Utah-based company, and that Plaintiff feels the harm from Defendant's breach in Utah.

  "Second, [the court] determine[s] whether substantial 'events material to those claims occurred' in the forum district."[40] While the court looks "to the entire sequence of events underlying the claim,"[41] "[t]he substantiality requirement is satisfied upon a showing of 'acts and omissions that have a *close nexus*' to the alleged claims."[42] And here, all the actions with a close nexus to the alleged claims occurred in Arkansas, not Utah.

  None of Plaintiff's asserted Utah-based actions have a close nexus to the claims. First, Defendant's visits to Utah for meetings and training have nothing to do with the claims. Plaintiff does not allege that those visits or any of Defendant's actions during those visits breached the contract. Second, the court does not find that entering into a contract governed by Utah law is enough to establish proper venue. Courts in venues outside of Utah are capable of applying Utah law. Indeed, if the contract's governing law provision was also enough to establish venue, then

---

[39] Compl. ¶ 29. Plaintiff's claims for tortious interference rely on these same actions. Compl. ¶ 35.
[40] *Emps. Mut. Cas.*, 618 F.3d at 1166 (quoting *Gulf Ins. Co.*, 417 F.3d at 357).
[41] *Id.* (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)).
[42] *Id.* (quoting *Jenkins Brick Co.*, 321 F.3d at 1372).

venue clauses would be superfluous in any contract with a governing law provision. But contracts frequently include both venue clauses and governing law clauses. The parties' choice not to include a venue provision should be honored, and the governing law provision should not be interpreted to supply one by implication. Third, the court likewise rejects the notion that the injury's downstream effects in Utah, based solely on Plaintiff's location, satisfy the venue requirement. Any injury in Utah is purely economic, and "[i]f economic harm to the plaintiff were enough to satisfy [§ 1391(b)(2)], a plaintiff could always bring suit in its home base, thus eviscerating the other parts of [§ 1391(b)]."[43]

      Neither do Plaintiff's cited cases help them. In *Purple Innovations LLC v. Honest Reviews LLC*, the claim arose from allegedly defamatory statements made on the internet.[44] There, the court applied an internet-specific venue principle: "where a defendant's allegedly unlawful acts occurred over the internet, a substantial part of the events occurred in Utah for purposes of venue if the defendant intentionally reached into the forum in an effort to do harm to the Utah business, knowing its location in Utah."[45] While the district court found it significant "that the brunt of the harm would be felt in Utah," it did so only under the specific standard

---

[43] *HME Providers, Inc. v. Heinrich*, 2010 WL 653920, at *3 (M.D. Fla. Feb. 18, 2010); *see Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) ("if Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly"); *Premier Grp., Inc v. Bolingbroke*, No. 15-cv-01469, 2015 WL 4512313, at *6 (D. Colo. July 27, 2015) ("Moreover, there is no dispute that the alleged breach of the non-compete agreements occurred in Utah. Any injury flowing to plaintiff in Colorado from the breach appears to be purely economic.").
[44] *Purple Innovations, LLC v. Honest Reviews, LLC*, No. 2:17-cv-138, 2017 WL 3172810, at *9 (D. Utah July 25, 2017).
[45] *Id.*

## II. Failure to State a Claim

Having determined that venue is improper, the court need not consider whether Plaintiff failed to state a claim for relief under Rule 12(b)(6).

## ORDER

Defendant's Motion Under F.R.C.P 12(b)(3) and (12)(b)(6) to Dismiss for Improper Venue and Failure to State a Claim[49] is GRANTED in PART and DENIED AS MOOT in PART. Defendant's motion under Rule 12(b)(3) is granted. Defendant's motion under Rule 12(b)(6) is denied as moot. Plaintiff's complaint[50] is dismissed without prejudice.[51]

Signed March 11, 2026.

BY THE COURT

David Barlow
United States District Judge

---

[49] ECF No. 12.
[50] ECF No. 2.
[51] 28 U.S.C.A. § 1406(a) also permits the court to transfer the case to another federal court "if it be in the interest of justice." Here, neither party has suggested transfer, much less explained why transfer would be in the interest of justice.